## DARNELL v. GRANT.

PATENTS; INTERFERENCE.

G filed his application for a patent August 14, 1897. D filed his application covering the same invention, July 8, 1898. In an interference proceeding between them, D conceded that G actually reduced the invention to practice in June, 1897, but claimed conception prior to that time. Held, in the absence of satisfactory evidence of D's reduction to practice prior to the filing of his application, or explanation of his delay, that G was entitled to an award of priority.

No. 145. Patent Appeals. Submitted May 8, 1900. Decided June 12, 1900.

HEARING on an appeal from a decision of the Commissioner of Patents in an interference proceeding.  *Affirmed.*

The facts are sufficiently stated in the opinion.

*Mr. V. H. Lockwood* and *Mr. J. H. Jochum, Jr.,* for the appellant.

*Messrs. Church & Church* for the appellee.

Mr. Chief Justice ALVEY delivered the opinion of the Court:

This is an appeal from the Patent Office in a matter of interference determined there by the Commissioner of Patents. The interference is between two applications for patents in relation to a rubber tire-setting machine; the first application being made by Arthur W. Grant, and the second by Calvin F. Darnell, and priority of invention being awarded to Grant, Darnell has appealed.

The application of Grant, the first that was filed, was presented in the Patent Office on the 14th day of August, 1897, and that of Darnell was filed July 8, 1898. The question in the case is one of fact merely, as between the two applicants, which of them is entitled to priority of invention?

In the preliminary statement of Grant, he avers that he conceived the invention involved in the issues of the interference in the spring of 1896, but that in the spring of 1897, during the early part of May, he took up the matter of the invention and made sketches thereof, and explained it to others, and began the making of patterns for a full-sized operative machine, and which machine was completed on or about the middle of June, 1897, and immediately thereafter was put into successful operation at the factory of the Rubber Tire Wheel Company, in Springfield, Ohio, and the operation of which machine was entirely successful, and a complete reduction to practice of said invention as contained in each of the counts of the declaration of interference.

In the preliminary statement of Darnell, he avers that he

conceived the invention set forth in the declaration of inter-
ference on or about November, 1895; that on or about
December of that year, he made drawings of the invention;
that in April of 1896, or between the first of January of
that year and April, he first explained his invention to
others; that he made the first model showing such inven-
tion in April, 1896, and made a full-sized wooden model of
the machine in December, 1896; that he was working on
a full-sized iron working model of said machine throughout
the year 1897, and completed said working model in June,
1898, and in July, 1898, the machine was successfully
*operated at his shop* in Indianapolis, and that he has con-
tinued to use it since from time to time.

The issues of interference are framed in six counts:

" 1. The combination with a stationary clamping device,
and an auxiliary clamping device adjacent thereto, said
stationary clamping device being provided with an auxil-
iary opening or openings adjacent to the clamping portions,
said auxiliary clamping device being movable in relation
to the stationary clamp, and means for holding said auxil-
iary clamping device in a fixed position, substantially as
specified.

"2. The combination with a stationary clamp having
band-holding jaws and auxiliary openings, as described, a
holding device on one side of said jaws, and a movable
clamping and tightening device on the opposite side of said
jaws, the jaws of said tightening device being adapted to be
brought into line or substantially so with the band-holding
jaws of the stationary clamp, substantially as and for the
purposes specified.

"3. In a device for putting on rubber tires, clamping-
jaws having reduced portions to extend into the tire-retain-
ing rim and notched holding-faces to engage the tire-retain-
ing band or bands, said band-holding devices being adapted
to be moved so as to vary the distance between same, and
means for positively holding said band-holding device in a

proper relative position for joining the ends of the retaining band or bands while the tire is in the channel or tire-holding rim, substantially as and for the purposes specified.

"4. In a machine such as described, band-holding jaws having the notched holding-faces and intermediate holding plate or tongue, means for varying the distance between said band-holding jaws and retaining the same in the proper position for uniting the ends of said bands, substantially as specified.

"5. The combination with a wheel-support band-holding devices, a laterally-movable head for supporting of said band-holding devices and a tension device having pivotally-mounted clamps or band-holding devices, substantially as specified.

"6. The combination with a supporting-bed having two sets of band-holding devices consisting of clamping-jaws as described, and a tension device arranged adjacent to said band-holding devices, and means on said tension device for clamping the band or bands so as to draw the same across the line of one of said band-holding devices, substantially as and for the purposes specified."

There was testimony taken by both parties, in support of their preliminary statements, and the case was apparently carefully considered by the different tribunals of the Patent Office, and they all fully concurred in holding that Grant was entitled to priority of invention. It is very clear that Grant is not only entitled to the benefit of a constructive reduction to practice from the time of the filing of his application, that is from August 14, 1897, nearly a year before the application of Darnell was filed, but he is entitled to the benefit of actual reduction to practice of the invention from about the middle of June or the first of July, 1897. This is virtually conceded by Darnell; for at the taking of the evidence the counsel for Darnell admitted and agreed that "in view of the testimony already given, and in order to shorten the matter of taking these depositions, he will admit that

Exhibit C was made about the middle of June, 1897, and Exhibit D about the middle of July, 1897, both substantially at the time Mr. Grant has testified, and that the machines, and each of them, were operated and used substantially as Mr. Grant has testified."

This admission was signed by the counsel for Darnell.

In view of this admission, even if it be conceded that Darnell was first to conceive the invention, the only question that is presented on this appeal is, whether he has used and exercised reasonable diligence in perfecting and reducing to actual practice the invention prior to the time of filing his application.

The tribunals of the Patent Office, while conceding that Darnell may have been or was the first to conceive the invention, yet they conclude that he never reduced such conception to actual practical operation prior to the time of the filing of his application—nearly a year after the application of Grant had been filed; and for this conclusion we think the evidence of the case affords sufficient warrant. It is true, for the purpose of showing actual reduction to practice in the latter part of 1896, and during the year 1897, he relies upon his own testimony, in which he says he had made a full-sized model or machine, and which he had in his shop. In answer to question No. 34, on direct examination, he says:

"It is at my shop, 1410 North Illinois street. I made it in the latter part of '96, and worked on it during the year 1897. A full-sized machine. And Mr. Staley, Grant's attorney, seen the machine in my shop, and I still worked on the machine up to June, 1898, and completed the same in July and operated the same successfully."

But on cross-examination he admitted that the machine or model made by him was very far from being complete or operative, as defined in the issues of interference, and that it had only been used as an illustration, and was nothing more than an experimental model. Mr. Staley, the

16 Ct. App.—39

attorney of Grant, referred to in the testimony of Darnell, was examined as a witness, and he says he never saw the machine or model referred to by Darnell in his answer to question 34, though he did see another or a different model.

If, however, we put the most favorable construction on the testimony of Darnell, as to the identity of the machine or model, and the time when it was made, still, the *onus* being upon him, he is not relieved of the difficulty of overcoming the conceded facts of both the actual and constructive reduction to practice by Grant, who was in the office seeking a patent for the invention nearly a year before the application of Darnell was filed, and the latter does not attempt to furnish any reasonable account for the delay.

As was very correctly said by the Commissioner of Patents: "Considering the evidence as presented, it clearly appears that Darnell, though the first to conceive the invention, did not reduce it to practice until he filed his application, which was about eleven months after Grant's application was filed. Darnell does not account for his delay, and therefore Grant, who was the first to reduce the invention to practical operation, though later to conceive and disclose it, is entitled to an award of priority."

The burden of proof is upon Darnell, the appellant, and he has failed to overcome it as against the claim of Grant. It follows therefore that the decision of the Commissioner must be affirmed; and this opinion, and the proceedings on this appeal, be certified to the Commissioner of Patents, as directed by the statute.

*Decision of Commissioner affirmed.*